UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KEVIN PETTY, *et al.*,

    *Plaintiffs*,

v.

PHIL MENDELSON, *Chairman, DC City Council*, *et al.*,

    *Defendants*.

Civil Action No. 25-00296 (AHA)

**Memorandum Opinion**

Plaintiffs filed this *pro se* action to prevent members of the D.C. Council from voting on a resolution to remove a fellow Councilmember. The Court construes the complaint's request for an "immediate temporary" injunction as a motion for a temporary restraining order. For the reasons below, Plaintiffs have not shown that they are entitled to such relief.

**I.    Background**

Plaintiffs are residents of Ward 8 in Washington, D.C. ECF No. 1 at 4.[1] They allege that the sitting Ward 8 Councilmember was "charged with an offense" in D.C. in August 2024. *Id.* The Councilmember was charged with one count of bribery and was indicted in September 2024. *See United States v. White*, No. 24-cr-00406-RC (D.D.C.). In November 2024, that Councilmember was reelected. ECF No. 1 at 4–5; *see* ECF No. 3 at 3. Plaintiffs allege Defendants have scheduled

---

[1] The complaint lists six plaintiffs, but is signed by only four individuals. ECF No. 1. Because one *pro se* plaintiff cannot represent another *pro se* plaintiff's interests, each plaintiff must individually sign each pleading. *See* Fed. R. Civ. P. 11(a) (providing that "[e]very pleading, written motion, and other paper must be signed . . . by a party personally if the party is unrepresented").

a hearing on whether to remove the Councilmember. ECF No. 1 at 5. According to Defendants, the Council is scheduled to vote on removal at noon today. ECF No. 3 at 6.

In the instant complaint, Plaintiffs assert that removing the Ward 8 Councilmember would violate their rights under the Fifth Amendment and 42 U.S.C. § 1983, as well as section 11(b) of the Voting Rights Act. ECF No. 1 at 5. The complaint requests "an immediate temporary and permanent injunction . . . against the Defendants, DC City Council, and any and all persons acting in concert to impugn the Plaintiffs' right to the representative of their choosing." *Id.*

Although Plaintiffs did not file a separate motion for a temporary restraining order, the Court construed their request for "immediate temporary" relief as such and ordered Defendants to respond. Min. Order (Feb. 3, 2025). Defendants filed their opposition on February 4, 2025.

## II.     Legal Standard

The grant of temporary injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "A plaintiff seeking a temporary restraining order must make the same showing as he would if seeking a preliminary injunction: he must establish 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Babamuradova v. Blinken*, 633 F. Supp. 3d 1, 8 (D.D.C. 2022) (quoting *Gordon v. Holder*, 632 F.3d 722, 724 (D.C. Cir. 2011)).

## III.    Discussion

Plaintiffs have not satisfied the high burden to obtain a temporary restraining order.

Plaintiffs' pleadings do not show they are likely to succeed on the merits. Plaintiffs offer conclusory assertions that removing an elected Councilmember would violate section 11(b) of the Voting Rights Act and the Fifth Amendment because it amounts to disenfranchisement, but do not

further articulate a legal theory or factual basis to support the claim. Section 11(b) of the Voting Rights Act, for instance, outlaws acts that threaten or intimidate voters. *See* 52 U.S.C. § 10101 (making it unlawful to "intimidate, threaten, coerce, or attempt to intimidate, threaten, or coerce any other person for the purpose of interfering with the right of such other person to vote or to vote as he may choose"). But as Plaintiffs acknowledge, they have not been intimidated, threatened, or coerced. *See* ECF No. 1 at 5 (acknowledging "Plaintiffs have not suffered any direct physical threat or action"). Plaintiffs' claim under the Fifth Amendment and § 1983 is similarly left unsupported by authorities or facts. *Monserrate v. New York State Senate*, 599 F.3d 148, 154 (2d Cir. 2010) (rejecting a challenge to removal of a legislator where the plaintiff invoked constitutional provisions but left it "largely ambiguous as to the specific rights that are infringed").

Here, D.C. law provides that "[b]y a 5/6 vote of its members, the Council may adopt a resolution of expulsion if it finds, based on substantial evidence, that a member of the Council took an action that amounts to a gross failure to meet the highest standards of personal and professional conduct." D.C. Code § 1-204.01(e)(1). The Code recognizes that "[e]xpulsion is the most severe punitive action, serving as a penalty imposed for egregious wrongdoing," and "should be used in cases in which the Council determines that the violation of law committed by a member is of the most serious nature, including those violations that substantially threaten the public trust." *Id.* Plaintiffs do not challenge the legality of this removal provision, and do not contend that its

terms are being violated. Plaintiffs accordingly have not established that they are likely to succeed in showing that their constitutional rights have been violated.[2]

Plaintiffs also have not shown that the remaining factors weigh in their favor. Plaintiffs fail to explain what irreparable harm they will suffer if Defendants proceed with the vote to expel the Councilmember. As explained, Plaintiffs acknowledge that they are not subject to any threat or intimidation. Moreover, assuming the Councilmember is expelled, that expulsion will be followed by a special election to ensure that the residents of Ward 8 enjoy continued representation—and the Councilmember could stand for election in that contest. ECF No. 3 at 12; *see Monserrate*, 599 F.3d at 155 (recognizing that the requirement of a timely special election would "reduce any burden imposed on voting rights"). Nor is it clear that the balance of the equities or the public interest favors Plaintiffs. It cannot be reasonably disputed that a legislative body has an important interest in maintaining its integrity. *See In re Chapman*, 166 U.S. 661, 668 (1897) (recognizing that Congress "necessarily possesses the inherent power of self-protection"). As noted, D.C. law allows expulsion only insofar as five of six Councilmembers determine that there is "substantial evidence" of "a gross failure to meet the highest standards of personal and professional conduct" and "egregious wrongdoing" that is "of the most serious nature." D.C. Code § 1-204.01(e)(1). The Council's important interest in maintaining its integrity in such circumstances is not outweighed by the generalized assertions in Plaintiffs' complaint.

---

[2] Defendants also point out that injunctive relief against individual Councilmembers may be barred by legislative immunity under the District's Speech or Debate statute, D.C. Code § 1-301.42. ECF No. 3 at 6–8; *see Dominion Cogen, D.C., Inc. v. District of Columbia*, 878 F. Supp. 258, 262 (D.D.C. 1995) ("It is clear that the District's Speech or Debate statute clothes D.C. City Council members with immunity from lawsuits—including § 1983 claims—for conduct undertaken in their legislative capacities." (citing *Gross v. Winter*, 876 F.2d 165, 169 (D.C. Cir. 1989))). Voting on a resolution clearly falls within Defendants' legislative capacities.

## IV. Conclusion

For the foregoing reasons, Plaintiffs' motion for a temporary restraining order is denied.

_____

AMIR H. ALI
United States District Judge

Date: February 4, 2025